THE PARKER-WASHINGTON COMPANY, Respondent, v. ST. LOUIS TRANSIT COMPANY, Appellant.

### St. Louis Court of Appeals, April 28, 1908.

1. **STREET RAILWAYS: Negligence: Contributory Negligence: Collision.** In an action against a street railway company for damage to the plaintiff's steam roller caused by a collision with defendant's car, the evidence is examined and held that whether the plaintiff's engineer in charge of the roller was guilty of contributory negligence which would preclude recovery and also the question as to whether the defendant's motorman was negligent in failing to check the speed of his car in time to avoid the collision after he could have seen the roller on the track, were properly submitted to the jury.

2. **NEW TRIAL: Newly Discovered Evidence.** In an action for damages to plaintiff's property, a motion for new trial on the ground of newly discovered evidence should have been sustained where the motion was supported by an affidavit showing defendant had discovered after the trial that the plaintiff did not own the property damaged, the ownership of which was taken for granted throughout the trial and no direct proof offered to that effect; the failure to disccover the ownership of the property before the trial could not be ascribed to lack of diligence on the part of defendant's counsel.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

REVERSED AND REMANDED.

*Edward T. Miller* and *Frank S. Whitelaw* for appellant; *Boyle & Priest* and *Morton Jourdan* of counsel.

*Barclay & Fauntleroy* for respondent.

GOODE, J.—While the servants of the respondent company were engaged in laying asphalt on Twentieth street at its intersection with Olive street in the city of St. Louis, a steam roller belonging to respondent was

crashed into by one of the appellant's trolley cars and
damaged.     This action instituted to recover the dam-
ages, resulted in a verdict in respondent's favor for
$260.     The accident occurred an hour or two before
noon on December 8, 1903.     The asphalt was being
laid on Twentieth street but extended into Olive street
to within ten feet of the north car track, there being
two tracks on Olive street.     The steam roller was used
for running over the surface of hot asphalt when it
was laid on the street to make a smooth surface.   When
still hot, the asphalt was soft and pliable, and if the
roller was stopped on the fresh asphalt, the roller, on
account of its weight, would sink into the asphalt and
leave a hole.     Hence the testimony is that it was neces-
sary after the roller had been run over the soft asphalt,
to run it off onto the hard surface of other portions of
the street.     In order to do this the engineer in charge
of the roller would run further south on Olive street
than the asphalt extended, and, as the latter came with-
in ten feet of the north car track and the roller was
fifteen or sixteen feet long, the engineer was compelled
to run it on the track in order to get it off the asphalt.
The engineer noticed the car which did the damage at
the intersection of Olive and Nineteenth streets, a block
to the east.     He saw the car there before he ran on
the track, but testified he had ample time to move the
roller that distance and get it off the track before the car
would reach him, if it was operated at its usual rate of
speed.     He testified that when he got "out there" (i. e.,
on the asphalt) he saw the car coming at a great rate
of speed and when it got within thirty feet of the roller
he put up his hand for the motorman to slacken speed;
that he could not get out of the way quickly enough to
prevent the car hitting him and it struck the roller about
the middle, broke the front part of the machine, threw it
across the street and carried the other part to the middle
of Twentieth street. The vestibule of the car was smash-

ed and the dash board dented. The roller was a slow moving machine and traveled about three miles an hour on the kind of street where it was in use. Just as the car struck the roller the latter was moved northward in an attempt to get off of the car track, having previously moved southward onto the asphalt. The engineer swore he was busy with his work but noticed for the approach of the car part of the time; that when he gestured to the motorman to stop, the car was moving about twelve miles an hour, and was moving at the same rate when it collided with the machine, and also when the engineer first saw it as it left Nineteenth street. He testified further that knowing the car was coming, he continued to run his machine toward and on the track, believing he had time to go on and then off in safety. Knowing the speed of his machine, he calculated he had time to go on the track and off before the car would reach him. It is earnestly insisted this testimony of the engineer shows conclusively, taking the evidence in its best phase for plaintiff, that his own negligence concurred with the motorman's in bringing about the collision. It is true the engineer testified he would have had time to go on the track and then off if the car had been running at its usual speed, but it is argued his own testimony shows he knew it was not running at the usual speed, and so knowing accepted the risk of a collision. The limit of speed as fixed by ordinance in the district where the accident happened, is ten miles an hour. The testimony of the operator of the roller shows he made a mistake in regard either to the speed of the car or the time he would consume in driving the roller over the asphalt and then off. We have been perplexed regarding this point, but considering the evidence in its entirety, incline to the opinion plaintiff ought not to be forced to a nonsuit on the theory of no fair inference being possible except that the engineer's negligence contributed to the accident. Besides

the unlawful speed of the car, the petition counts on the omission of the motorman to use proper care to avoid colliding with the roller after he saw, or by the exercise of ordinary care, would have seen, it was on the track and in danger of being hit. Some of the testimony for plaintiff indicates gross negligence, approaching recklessness, on the part of the motorman. One witness said the car was going so fast it drew his attention; and he pictured the motorman with his left elbow on the controller, with the full electric power turned on and his right hand on the brake, but said he did nothing to check the speed. This witness was testifying about the conduct of the motorman when the car was in the middle of the block between Nineteenth and Twentieth streets. Another witness said the car was running eighteen or twenty miles an hour when the motorman attempted to check it fifty or seventy-five feet from the roller. A witness or two swore he made no effort to reverse the car or put on the brakes, and, indeed, did nothing to check its speed until he was within fifty or sixty feet of the roller, when he threw off the power and stepped back into the car to avoid injury in the impending collision. He could have seen the machine as far away as Eighteenth street. When the car was at Nineteenth street, the roller was in plain sight and was then only twenty feet north of the car track, the engineer swore. Its movement to the asphalt and the car track could have occupied only a moment or two, and it was in the motorman's gaze as it advanced toward and on the track. Probably he expected it to move off before the car reached the crossing. The engineer was occupied, more or less, with his work. Because the roller was conspicuous, and its slow movement and the behavior of the engineer in charge of it were visible to the motorman for so long a distance, we have concluded it was for the jury to say whether, by proper vigilance, he could have realized .

from the way the engineer handled the roller, there was danger of striking it, and soon enough to get control of his car and check its speed in time to prevent the collision. The point of difficulty, as in most cases of the kind, is to determine just when the danger ought to have been apparent to the motorman. We hold this is a jury and not a court question on all the facts in proof in the present case.

The judgment must be reversed for a point which escaped attention on the first hearing. No direct proof was introduced that plaintiff owned the roller, but its ownership was taken for granted throughout the trial and might be inferred from the evidence. In the motion for new trial it was charged the defendant had learned, since the case was submitted to the jury, the plaintiff was not the owner of the roller and that it belonged to the Gilsonite Company. Defendant did not know this until after the case was closed and submitted. This ground for a new trial is supported by the affidavit of the attorney for the defendant. Said affiant states he had charge of the preparation of the case for trial, and after it had been submitted to the jury and the case closed, he learned for the first time the roller was the property of the Gilsonite Company and belonged to it. Of course the plaintiff is not entitled to recover for damage to the machine if it belongs to another party, and lack of title in the plaintiff is a fact which might well escape the attention of defendant's officers and counsel, however diligent they were in searching for evidence. A verdict ought not to be set aside for newly discovered evidence if it is cumulative, or the failure to discover it in time for use at the trial is to be ascribed to the inattention or other fault of the losing party; and on this proposition the decisions are strict. [Miller v. Whitson, 40 Mo. 97.] But we think nothing of the kind can fairly be charged against the defendant or its counsel in the present case. An attorney naturally

would direct his efforts toward disproving the grava-
men of the case, would not be likely to surmise a party
was suing for damages to property belonging to some
one else, and probably would become apprised of the
latter fact, if it existed, by chance. For this reason
the judgment will be reversed and the cause remanded.
All concur.